**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

)
UNITED STATES OF AMERICA,              )
*ex rel*. KEAVENEY, *et al*.           )
                                       )
              Plaintiffs,              )
                                       )
                                       )
              v.                       )    Civil Action No. 13-855 (EGS)
                                       )
SRA INTERNATIONAL, INC.,               )
*et al*.                               )
                                       )
                                       )
              Defendants.              )
_____)

**<u>MEMORANDUM OPINION</u>**

*Qui Tam* Relators Kevin Keaveney and Margot Brennan
(collectively "Relators") allege violations of the False Claims
Act ("FCA"), 31 U.S.C. § 3729-3733, against Defendants SRA
International, Systems Research and Applications Corporation
(collectively "SRA") and Triton Services (collectively
"Defendants"). Am. Compl., ECF No. 32 at 71-79. Relators allege
that, to secure a Department of Defense ("DOD") contract,
Defendants made numerous false statements to the government. *Id*.
Defendants SRA and Triton move to dismiss Relators' Complaint
for failure to state a claim under Federal Rule of Civil
Procedure 12(b)(6) and for failure to plead with particularity

1

as required under Federal Rule of Civil Procedure 9(b). SRA Mot. Dismiss, ECF No. 35; Triton Mot. Dismiss, ECF No. 38. Upon review of Defendants' motions, the responses and replies thereto, and for the reasons discussed below, Defendants' Motions to Dismiss are **GRANTED** in part and **DENIED** in part.

### I.   BACKGROUND

### A. Procedural History

On June 7, 2013, Relators filed their Complaint, Compl., ECF No. 1, and on February 23, 2015, the United States filed a Notice of Election to Decline Intervention. ECF No. 14. Defendants were served with the Amended Complaint on August 19, 2015, and on October 16, 2015, Defendants filed the two motions to dismiss pursuant to Rules 12(b)(6) and 9(b) that are now before this Court. SRA Mot. Dismiss, ECF No. 35; Triton Mot. Dismiss, ECF No. 38.

In the Amended Complaint, Relators allege that Defendants engaged in a wide array of conduct that ultimately led to the submission of false claims to the government, including that Defendants: (1) made misrepresentations and concealed key information from their proposals to fraudulently induce the government to enter into the contract (Count I); (2) charged excessive pass-through fees for subcontractor labor (Count II); (3) made misrepresentations in monthly status reports and other

2

submissions to the government (Counts III and IV); (4) inflated invoices and charged the government for services that were never rendered (Count V); and (5) implemented a kickback scheme wherein Defendants shared the proceeds of their allegedly fraudulent conduct amongst themselves (Count VI). Am. Compl., ECF No. 32 ¶¶ 121-150.

### B. Relationship Between the Parties

Relator Kevin Keaveney is the President of K2 Global Solutions, Inc. ("K2GS"), a defense contracting company that supplies a variety of services to federal entities, including strategic planning, risk analysis, predictive modeling, defense readiness systems and data analysis. *Id.* ¶ 4. Mr. Keaveney has extensive experience in the national security sector and has developed a range of products and strategic management systems that have been widely adopted by the United States military. *Id.* ¶¶ 12-16. These products include, *inter alia*, the Army Reserve Expeditionary Force ("AREF"), a doctrinal and strategic management system used by the Army Reserve, and an automated version of AREF known as the Army Reserve Pool Based Sourcing ("ARPBS"). *Id.* ¶¶ 12-14. Relator Margot Brennan is an officer of K2GS. *Id.* ¶ 5.

Defendant Systems Research and Applications Corporation is a wholly-owned subsidiary of Defendant SRA International, Inc.

and serves as SRA's primary contract vehicle with the U.S. government. *Id*. ¶ 6. In 2007, SRA entered into a joint venture named "Project Galaxy" with Defendant Triton Services, Inc. ("Triton"), a subcontractor. *Id*. ¶ 8. To perform the contract, Triton engaged various second-tier subcontractors, including K2GS, Tiber Creek Consulting, Inc. ("Tiber Creek"), Concurrent Technologies Corporation ("CTC"), and an individual named Jim Song.

From June to October 2005, Mr. Keaveney worked as a contractor for the DOD reporting to Joseph Angello, the Director of the Office of the Undersecretary of Defense, Personnel and Readiness, Readiness, Programming and Assessments. *Id*. ¶ 15. In February 2007, after Mr. Keaveney's contract expired, Mr. Angello requested Mr. Keaveney's assistance to continue the ARPBS and other military projects Mr. Keaveney had developed. Because Mr. Angello required Mr. Keaveney to procure his own contract vehicle, Mr. Keaveney approached Triton, a pre-approved subcontractor for various Department of Defense prime contractors. *Id*. ¶ 18. Triton's Chief Executive Officer, Larry Stack, informed Mr. Keaveney that Triton would use one of its existing prime contracting relationships, ultimately its relationship with SRA, to obtain the requisite contract vehicle. *Id*. ¶ 18.

### C. Defendants' Contracts with the U.S. Department of Defense

In 2003, the Department of Defense awarded Galaxy Scientific Corporation ("Galaxy"), a future subsidiary of SRA, a contract to provide analytic services and software. *Id*. ¶ 19. Galaxy teamed with Triton in early 2007 to become the prime contractor for an additional contract anticipated to be let in May 2007. *Id*. In March 2007, Mr. Angello met with Triton, Mr. Keaveney and another DOD representative to discuss the anticipated contract. *Id*. ¶ 20. At this meeting, the participants discussed Mr. Keaveney's future role, the structure of the prospective contract, limits on Triton's pass-through rates, and the roles of second-tier subcontractors. *Id*.

On June 13, 2007, Triton and SRA submitted a proposal, called a Task Execution Plan ("TEP" or "task proposal"), to the DOD outlining their anticipated work on the contract. *Id*. ¶ 23. The TEP highlighted Mr. Keaveney's role as "Technical Team Leader" and detailed the six discrete tasks to be performed. *Id*. Defendants' proposal was ultimately successful and SRA and Triton secured the task order. *Id*. ¶ 24. On May 6, 2008, Defendants submitted a "follow-on" TEP to the DOD to request additional funds for the second half of the contract's base year and the following two option years. *Id*. ¶ 35. The 2008 TEP was largely similar to the 2007 TEP. *Id*. To keep the government

apprised of their progress under the contract, Defendants submitted Monthly Status Reports ("MSRs"). *Id*. ¶ 59. In late 2008, Defendants removed Mr. Keaveney, K2GS and Tiber Creek from the contract and replaced them with Triton employees. *Id*. ¶¶ 39-42; 138.

## II.   STANDARD OF REVIEW

### A. Federal Rule of Civil Procedure 12(b)(6)

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). The pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). The pleading standard does not require detailed factual allegations, but should be "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*. at 678. Naked assertions without factual enhancements or formulaic recitations of the elements of a cause of action will not suffice. *Id*. Rather, to survive a motion to dismiss, a complaint "must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Id*. Plausibility entails that the plaintiff has pled factual content that is not merely consistent with liability but allows the Court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id*.

In considering a 12(b)(6) motion, the Court should liberally view the complaint in the plaintiff's favor, accepting all factual allegations as true, and giving the plaintiff the benefit of all inferences that can be drawn therefrom. *Redding v. Edwards*, 569 F. Supp. 2d 129, 131 (D.D.C. 2008) (citing *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994)).

## A. Federal Rule of Civil Procedure 9(b)

Rule 9(b) requires that when alleging fraud, "the circumstances constituting fraud or mistake... be stated with particularity." Fed. R. Civ. P. 9(b). Complaints brought under the False Claims Act are subject to Rule 9(b)'s heightened pleading requirements. *See U.S. ex rel. Totten v. Bombardier*, 286 F.3d 542, 551-52(D.C. Cir. 2002)("Every circuit to consider the issue has held that, because the False Claims Act is self-evidently an anti-fraud statute, complaints brought under it must comply with Rule 9(b)."). That said, a plaintiff "need not allege the *existence* of a request for payment with particularity...Rule 9(b) requires particularity only with respect to the circumstances *constituting fraud*[.]" *U.S. ex rel. Folliard v. CDW Tech. Servs., Inc.*, 722 F. Supp. 2d 20, 27 (D.D.C. 2010) (emphasis in original).

To meet this threshold, plaintiffs must "state the time, place and content of the false misrepresentations, the fact

misrepresented and what was retained or given up as a consequence of the fraud." *U.S. ex rel. Williams v. Martin-Baker Aircraft Co.*, 389 F.3d 1251, 1256 (D.C. Cir. 2004) (internal citations omitted). Pleaders must also identify the individuals allegedly involved in the fraud. *Id*. The particularity requirement discourages nuisance suits, safeguards defendants from frivolous accusations, and guarantees that defendants receive sufficient information to allow them to prepare a response. *U.S. ex rel. Joseph v. Cannon*, 642 F.2d 1373, 1385 (D.C. Cir. 1981).

Courts "must not rigidly apply the requirements of Rule 9(b), but rather should analyze the Rule on a case by case basis." *U.S. ex rel. Head v. Kane Co.*, 798 F. Supp. 2d 186, 193 (D.D.C. 2011). Courts should "hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts." *U.S. ex rel. Barrett v. Columbia/HCA Healthcare Corp.*, 251 F. Supp. 2d 28, 34 (D.D.C. 2003). A complaint "can pass muster under the Rule 12(b)(6) threshold yet fail to comply with the strictures of Rule 9(b)." *Anderson v. USAA Cas. Ins. Co.*, 221 F.R.D. 250, 252 n.3 (D.D.C. 2004). Thus Courts consider first whether the relator has pled the relevant claim, and then turn

to whether the relator has "pled the circumstances of the fraud with particularity." *Folliard*, 722 F. Supp. 2d at 28.

## B. False Claims Act

The FCA, 31 U.S.C. §§ 3729-3733, imposes a civil penalty and treble damages on any individual who "knowingly presents, or causes to be presented, to an officer or employee of the United States Government...a false or fraudulent claim for payment or approval" or "a false record or statement to get a false or fraudulent claim paid or approved by the Government." 31 U.S.C. § 3729(a).[1] The FCA defines "claims" to include "any request or demand, whether under a contract or otherwise, for money or property[.]" 31 U.S.C. § 3729(c). Under the statute, a private party, commonly called a "relator," is empowered to bring a *qui tam* action on behalf of the government. The Government may elect to intervene in *qui tam* actions, but where it declines to do so (as in this case), the Relators may proceed and, if successful, collect a large portion of any recovery. *Martin v. Arc of Dist. of Columbia*, 541 F. Supp. 2d 77, 81 (D.D.C. 2008) (citing *U.S.*

---

[1] On May 20, 2009, Congress amended the FCA in the Fraud Enforcement and Recovery Act of 2009 ("FERA"). The 2009 amendment, among other things, slightly alters the language in the presentment provision. According to Congress, the amendment took "effect on the date of enactment of th[e] Act and shall apply to conduct on or after the date of enactment[.]" P.L. 111-21, § 4 at 1625. Since the alleged conduct in this action occurred before May 2009, the provision as amended by FERA does not apply here. *See United States v. Toyobo Co.*, 811 F. Supp. 2d 37, 45 n.2 (D.D.C. 2011). All references in this opinion to § 3729(a) are to the pre-amendment version of the statute.

*ex rel. Williams v. Martin-Baker Aircraft Co.*, 389 F.3d 1251, 1254 (D.C. Cir. 2004)). False Claims may take a variety of forms, including: (1) presentment claims; (2) fraudulent inducement claims; and (3) false certification claims. *Head*, 798 F. Supp. 2d at 195. A subcontractor may be liable under the statute "even when it did not itself present any false claims to the government if it engaged in a fraudulent scheme that induced the government to pay claims submitted by the contractor." *Toyobo*, 811 F. Supp. 2d at 45.

### III. ANALYSIS

Defendants make several arguments in support of their Motions to Dismiss: (1) Relators' Amended Complaint is barred by the statute of limitations; (2) Relators' Amended Complaint failed to comply with FCA pre-filing requirements; (3) Relators fail to state a claim for fraudulent inducement; (4) Relators fail to state a presentment claim for various phantom expenses, pass-through fees and purported kickback scheme; and (5) Relators fail to state a material false statement claim. Each argument will be addressed in turn.

### A. Relators claims in the Amended Complaint relate back to original complaint and thus are not barred by the statute of limitations.

Defendants first argue that the claims alleged in Relators' Amended Complaint are barred by the FCA's six year statute of limitations because the Relators' Amended Complaint "advances

10

several new alleged false claims or false statements, *i.e.*
theories of liability, that are not encompassed within the
original Complaint." SRA Mot. Dismiss, ECF No. 35 at 8(citing to
a purported eleven alleged new claims); Triton Mot. Dismiss, ECF
No. 38 at 7-8. Relators maintain that the six Counts in the
Amended Complaint "relate back to the original complaint, since
the legal claims and the basic factual allegations are
substantively identical to the original complaint . . . ."
Relators' Opp'n, ECF No. 42 at 41.

The FCA precludes civil actions filed "more than 6 years after
the date on which the violation . . . is committed." 31 U.S.C. §
3731(b)(1). The alleged violations in this case occurred between
June 2007 and November 2008, while the Amended Complaint was
filed more than six years later on August 19, 2015. *See* Am.
Compl., ECF No. 32. However, under Rule 15(c)(1)(B), "an
amendment to a pleading relates back to the date of the original
pleading when . . . the amendment asserts a claim or defense
that arose out of the conduct, transaction or occurrence set out
– or attempted to be set out – in the original pleading." Fed.
R. Civ. P. 15(c)(1)(B). The Court of Appeals for the District of
Columbia Circuit ("Court of Appeals") has held that, in making
the determination of whether an amendment relates back to the
date of the original complaint, courts should consider whether
the allegations in the amended complaint relate to the same

contract at issue in the original complaint. *U.S. ex rel. Miller v. Bill Harbert Int'l Constr., Inc*., 608 F.3d 871, 882, 908 (D.C. Cir. 2010) (*per curiam*) (holding that amended claims related to two distinct contracts were not "fairly encompass[ed]" by the claims in original complaint, which were based on a third contract, were "unique and no two involved the same 'conduct, transaction[], or occurrence.'"); *see also* J.B. Helmer, *False Claims Act: Whistleblower Litigation* at 618 (6th ed. 2012) (noting that a relator must often rush to file the initial complaint and that amendment provides the "opportunity to craft the allegations of the complaint more carefully" and should be construed to relate back under Rule 15 as long as the amended allegations "arise out of the conduct or occurrences set forth or attempted to be set forth in the initial complaint.").

A review of the Amended Complaint confirms that the same six counts pled in the Amended Complaint are also pled in the original complaint. *See* Comparison of Amended Complaint against Original Complaint, ECF No. 35-3. Moreover, the changes reflect Relators' effort to enhance the level of factual detail. *See id*. Relying on *Miller*, Defendants argue that the mere fact Relators' complaints concern the same underlying contract is insufficient to invoke the relation back doctrine. SRA Mot. Dismiss, ECF No. 35 at 9. However, Defendants' argument is not persuasive. In *Miller*, the Court of Appeals considered whether claims based on

12

two separate contracts properly related back to the claims initially pled that arose from a third contract. 608 F.3d at 882. The Court of Appeals noted that the three contracts at issue were "similar only in that each was funded" by the same source and concerned work related to sewer systems, ultimately concluding that the "differences among [the contracts] are significant." *Id*. at 881. By contrast, both the amended and original complaints here clearly address the same underlying contract and arise out of the same conduct. *See* SRA Mot. Dismiss, ECF No. 35 at 9 (conceding that "the connection to the subject task order" is a "commonality" between Relators' complaints). Further, Defendants' argument that the Amended Complaint advances several new "theoretical" bases of liability is inaccurate in light of the fact that the six counts provided in the original complaint remain the same. *See id.*; Am. Compl., ¶ 121-150. The Court finds that Relators' Amended Complaint "expand[s] upon or clarif[ies] facts previously alleged" and thus properly relates back to the original complaint. *United States v. Hicks*, 283 F.3d 380, 388 (D.C. Cir. 2002)(citing 6A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1504, at 84 (2d ed. 1990)). Because the Amended Complaint relates back to the original complaint, it was timely filed under Rule 15.

### B. Relators Amended Complaint complies with FCA pre-filing procedures.

Defendants also argue that the Amended Complaint should be dismissed for failure to comply with 31 U.S.C. § 3730(b)(2), which requires all FCA complaints to be filed under seal. SRA Mot. Dismiss, ECF No. 35 at 9; Triton Mot. Dismiss, ECF No. 38 at 7-8. Relators respond that the statutory requirement to file the Complaint under seal applies only to the original complaint, not the Amended Complaint. Relators' Opp'n, ECF No. 42 at 42.

Section 3730(b)(2) of the False Claims Act requires:

> A copy of the complaint and written disclosure of substantially all material evidence and information the person possesses shall be served on the Government pursuant to Rule 4(d)(4) of the Federal Rules of Civil Procedure. **The complaint shall be filed in camera, shall remain under seal for at least 60 days, and shall not be served on the defendant until the court so orders.** The Government may elect to intervene and proceed with the action within 60 days after it receives both the complaint and the material evidence and information.

31 U.S.C. § 3730(b)(2) (emphasis added). The purpose of the sealing requirement is "designed to provide the government with an opportunity to ensure that a *qui tam* action [does] not inadvertently 'tip off' a defendant who was already the subject of a 'sensitive' criminal investigation." Helmer, *False Claims Act: Whistleblower Litigation* at 619.

Here, Relators properly filed the original complaint under
seal. Compl., ECF No. 1. After the Court granted four extensions
of time for the government to decide whether to intervene, it
declined to do so. *See* Notice of Election to Decline
Intervention, ECF No. 14. After the government declined to
intervene, the original complaint was unsealed. *See* Order to
Unseal Complaint, ECF No. 15. In its order to unseal the
original complaint, the Court also ordered that "[a]ll other
matters occurring in this action...be filed publicly". *Id*. Under
these circumstances, the purpose of the sealing requirement was
met. The cases cited by Defendants are inapposite because they
involve situations where the original complaint was not filed
under seal. *See*, *e.g.*, *Taitz v. Obama*, 707 F. Supp. 2d 1, 4
(D.D.C. 2010) (motion to dismiss FCA claims granted for failure
to file original complaint under seal); *Segelstrom v. Citibank*,
76 F. Supp. 3d 1, 14 (D.D.C. 2014) (same). Further, because the
Court granted Relators leave to amend the original complaint
after it had been unsealed, it would be unnecessary for the
Amended Complaint to be filed under seal. *See also U.S. ex rel.*
*Ubl v. IIF Data Solutions*, No. 06-cv-0641, 2009 WL 1254704, at
*4 (E.D. Va. May 5, 2009) ("In general, where the court already
has unsealed the case and granted the relator leave to amend the
complaint, the policy arguments supporting dismissal for failure

to comply with the filing and service requirements no longer hold.").

### C. Relators' Fraudulent Inducement Claims

Fraudulent inducement actions arise out of "claim[s] submitted to the Government under a contract which was procured by fraud[.]" *U.S. ex rel. Bettis v. Odebrecht Contractors of Cal., Inc.*, 393 F.3d 1321, 1326 (D.C. Cir. 2005). Contrary to presentment claims which rest on false demands for payment, "fraudulent inducement and false certification claims do not depend on the existence of such explicitly false payment requests." *Head*, 798 F. Supp. 2d at 196. Instead, fraudulent inducement claims simply require an initial false representation to the government. *See Bettis*, 393 F.3d at 1328.

To state a claim for fraudulent inducement, a plaintiff may allege that the defendant "made an initial misrepresentation about its capability to perform the contract in order to induce the government to enter into the contract[,] and...this original misrepresentation tainted every subsequent claim made in relation to the contract[.]" *U.S. ex rel. Schwedt v. Planning Research Corp.*, 59 F.3d 196, 199 (D.C. Cir. 1995). Allegations that the government would not have entered into the contract absent a defendant's false statements may also state a claim for fraudulent inducement under the FCA. *United States v. Honeywell Int'l Inc.*, 798 F. Supp. 2d 12, 22 (D.D.C. 2011).

Relators raise fraudulent inducement claims in Counts I and IV of the Amended Complaint. In Count I, Relators allege that Defendants engaged in a "bait and switch" in an effort to induce the government to enter into the contract. In particular, Relators allege that Defendants omitted key information from task proposals— *i.e.*, the "bait" — only to later "substitute[] their own unqualified personnel to complete the remaining tasks under the contract" – *i.e.*, the "switch". Am. Compl., ECF No. 32 ¶ 2. Although a bait and switch is not a cognizable cause of action for purposes of the FCA, it is "well established that prong (a)(1)(B) of section 3729", under which Relators bring their bait and switch claims, "encompasses a cause of action based on a theory of fraudulent inducement." *United States ex rel. Tran v. Computer Scis. Corp.*, 53 F. Supp. 3d 104, 117 (D.D.C. 2014). In Count IV(a),[2] Relators allege that Defendants knowingly concealed Triton's insolvency in order to influence the government's decision to award the contract to Defendants. Am. Compl., ECF No. 32 ¶ 139. Defendants contend, among other things, that Relators do not adequately allege a misrepresentation in the task proposals and fail to identify disclosure requirements regarding Triton's financial status. SRA

---

[2] Count IV of the Amended Complaint, in effect, alleges claims for fraudulent inducement (pertaining to the disclosure of Triton's insolvency) and material misrepresentation (relating to APRBS projections). For clarity, the Court has separated the claims into Count IV(a) and IV(b) respectively.

Mot. Dismiss, ECF No. 35 at 10-16, 42-43; Triton Mot. Dismiss, ECF No. 38 at 10-13, 29. Defendants challenge Relators' allegations for failing to state a claim under Rule 12(b)(6) and for failure to plead with the requisite level of particularity under Rule 9(b). SRA Mot. Dismiss, ECF No. 35 at 10-20; Triton Reply, ECF No. 43 at 1-3. For the reasons stated below, Counts I and IV(a) will be **DISMISSED**.

1. <u>Task Execution Proposals (Count I)</u>

In Count I, Relators contend that Defendants' task proposals "falsely stated or implied that [SRA and Triton] were the only two contractors attached to the subject contract, that Keaveney and K2GS's credentials were their own, and that Keaveney was a Triton employee" which "enabled [SRA and Triton] to procure the subject contract[.]" Am. Compl., ECF No. 32 ¶ 26. To support their allegations, Relators provide a number of details explaining how Defendants fraudulently induced the government to enter into the contract. Most relevant to their claim for fraudulent inducement, Relators allege, *inter alia*, that Defendants: (1) attempted to pass off Relators experience as their own in the 2007 and 2008 TEPs, even though Mr. Keaveney was an independent subcontractor; and (2) failed to notify the government that they were using subcontractors.[3] *Id*. ¶ 122.

---

[3] In Count I, Relators also allege that Defendants failed to notify the government when they terminated Mr. Keaveney and K2GS and deliberately failed

Relators allege that in order to initially secure the contract, Defendants intentionally omitted from their 2007 proposal the identities of the subcontractors who were slated to complete "the vast majority of the work" yet "cit[ed] all their credentials." *Id*. ¶ 24. Defendants also allegedly "misrepresented Keaveney as a Triton employee" to "take credit for, and control of, the entire contract[.]" *Id*. According to Relators, Defendants employed such tactics in order to "falsely represent themselves...as the 'only' subject matter experts" so that Defendants could qualify as the government's "single source" provider and obtain exclusive rights to future contracts within the same specialized field. *Id*. ¶ 26(g). To substantiate their allegations, Relators point to specific provisions of the 2007 proposal which seemingly attribute Relators' relevant subject-matter expertise to "Team Galaxy", the group name for SRA and Triton, rather than to Mr. Keaveney himself. *Id*. ¶ 30 (listing authored books on the contract's subject matter as examples of "Team Galaxy's Extensive Experience"); ¶ 31 (alleging that the experience cited in pages 5-20 of the proposal "was devoted entirely to Keaveney's experience, with two minor exceptions"). Relators allege that Defendants made

---

to submit subcontractor projections after the contract's base year. *See* Am. Compl., ECF No. 32 ¶ 122. Since both of these alleged failures would have occurred after performance on the contract began, it is not clear how these allegations are relevant to Relators' claim that Defendants fraudulently induced the government to initially enter into the contract.

similar misrepresentations in their 2008 task proposal. *Id.* ¶ 35. Relators also allege that the government would not have entered into the contract absent Defendants' false statements. *Id.* ¶ 124(alleging that Defendants used misrepresentations "in order to obtain the contract"); ¶ 24 (alleging that Defendants' citation of the subcontractors' credentials in the 2007 TEP was "critical to securing the subject contract"); ¶ 26(c) (alleging that Defendants' false statements "enabled Defendants to procure the subject contract, as well as any and all related and future contracts and task orders"); ¶ 125 (alleging that the statements regarding Mr. Keaveney's role in Defendants' TEPs and MSRs "would have had a natural tendency to influence DoD's funding decisions, and thus were material").

Defendants argue that Relators' fraudulent inducement claims fail for a number of reasons, including because: (1) Mr. Keaveney and K2GS's participation was clearly disclosed in the proposals; and (2) Relators rely on FAR clauses requiring subcontractor disclosure that were not in existence during the performance of the contract. SRA Mot. Dismiss, ECF No. 35 at 11-18; Triton Mot. Dismiss, ECF No. 38 at 11-18. Triton separately argues that Relators have also impermissibly grouped Triton (the subcontractor) together with SRA (the prime contractor) and failed to allege that Triton's actions meet the requirements for subcontractor liability under the FCA. Triton Mot. Dismiss, ECF

No. 38 at 10. Relators do not, as Defendants point out, directly respond to Defendants' arguments but instead offer excerpts from cases addressing the implied certification theory for FCA claims.[4] *See* Relators' Opp'n, ECF No. 42 at 18-20; SRA Reply, ECF No. 44 at 6 ("There is a glaring silence on these points in Plaintiffs' Opposition").

The Court finds that Relators' fraudulent inducement claims fail for a number of reasons. First, Relators have failed to adequately plead the misrepresentation component of a fraudulent inducement claim. *See Schwedt*, 59 F.3d at 199 (reasoning that "an initial misrepresentation about [the defendant's] capability to perform the contract" is an element of a fraudulent inducement claim). Relators' claim that Defendants concealed the existence of Relators in the task proposals is directly contradicted by the proposals themselves, which Relators attached to their Amended Complaint. ECF No. 32-2.[5] As highlighted by Defendants, Mr. Keaveney is "featured prominently

---

[4] The Court finds Relators' recitation of implied certification cases to be inapposite for the purposes of their fraudulent inducement claims. While an implied certification theory of FCA liability rests on allegations that a "contractor withheld information about its noncompliance with material contractual requirements" – *see Toyobo*, 811 F. Supp. 2d at 45 – Relators here have not identified any relevant contractual requirements pertinent to Defendants. Further, implied certification cases generally concern an analysis of whether a "claim" is legally false, *see id.*, but the task proposals at the center of Relators' fraudulent inducement allegations are not "claims" for purposes of the FCA because they are not a "request or demand...for money or property[.]" 31 U.S.C. § 3729(c).

[5] In determining whether a complaint fails to state a claim, courts "may consider...documents either attached to or incorporated in the complaint[.]" *E.E.O.C. v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997).

in the proposal." SRA Mot. Dismiss, ECF No. 35 at 14. In the
2007 proposal, for example, Defendants note that "Technical Team
Leader, Kevin Keaveney" will serve "as the primary point of
contact for execution." Task Execution Plan, ECF No. 32-2 at 32.
The proposals further note that "Keaveney, adds the value to
[Defendants'] approach" and laud Mr. Keaveney's "forward
thinking" as an attribute that will "shape[]...[Keaveney's]
performance of these tasks[.]" *Id.* at 58. Indeed, the proposals
are replete with descriptions of the tasks that "Technical Team
Leader", meaning Mr. Keaveney, will perform. *See, e.g., id.* at
32 ("provide project oversight to both Project Lead and the
Program Manager"); 35 ("use his SSTR experience to evaluate DoD
progress"); 36 ("use [his] network of SSTR Subject Matter
Experts (SMEs) to identify and evaluate each new task"), 39
("create and present a SSTR briefing to the DoD"). Even the
Amended Complaint acknowledges that "the TEP set forth
Keaveney's role as the Technical Team Leader and Client
Interface on all six discrete tasks...[and] also included all of
Keaveney's qualifications and specialized knowledge[.]" Am.
Compl., ECF No. 32 ¶ 23. Relators allege that Defendants co-
opted Mr. Keaveney's subject matter expertise and passed it off
as their own, but have appended to their complaint proposals
which provide detailed information of Mr. Keaveney's
qualifications and expertise. In light of the extensive

references to Mr. Keaveney's expertise and anticipated involvement in the 2007 and 2008 proposals, the Court finds Relators' claims that Defendants made misrepresentations to the government by taking credit for Mr. Keaveney's experience in the proposals to be implausible. *See Iqbal*, 556 U.S. at 677-78.

Second, Relators repeatedly state, in conclusory fashion, that Defendants impermissibly characterized Mr. Keaveney as a Triton employee in the 2007 and 2008 task proposals. *See, e.g.*, Am. Compl., ECF No. 32 ¶¶ 2, 24, 26(g), 35, 46, 57, 122. Relators, however, do not cite specific provisions in the proposals that support their claim. *See generally id*. SRA correctly notes that the term "employee" appears but once in the 2007 proposal and does not refer to Mr. Keaveney as an employee. SRA Mot. Dismiss, ECF No. 35 at 13; Task Execution Plan, ECF No. 32-2 at 54. Relators fail to allege any other facts that might support their claim that Defendants impermissibly held Mr. Keaveney out as an official employee. *See generally* Am. Compl., ECF No. 32. To the extent that Relators' argument is that, by not explicitly referring to Mr. Keaveney as an independent subcontractor in the task proposals, Defendants implied that Mr. Keaveney was a Triton employee, Relators have failed to allege how this distinction fraudulently induced the government to enter into the contract. *See Honeywell*, 798 F. Supp. 2d at 22 (reasoning that allegations that the government would not have

23

entered into the contract absent a defendant's false statements state a claim for fraudulent inducement under the FCA). As a result, the Court does not find Relators' claim that Defendants fraudulently held out Mr. Keaveney as a Triton employee in order to induce the government to enter into the contract to be plausible. *See Iqbal*, 556 U.S. at 677-78.

Third, Relators have failed to allege how Defendants' alleged failure to notify the government of the existence of the subcontractors induced the government to enter into the contract. Relators, citing Federal Acquisition Regulations ("FAR") 52.215-22 and 52.215-23.2, argue that subcontractor disclosure was required.[6] *See* Am. Compl., ECF No. 32 ¶ 27. Defendants argue that these provisions were not enacted until 2009, subsequent to the execution of the underlying contract in 2003 and do not apply retroactively. SRA Mot. Dismiss, ECF No. 35 at 15; *see also* 48 C.F.R. § 1.108(d)("FAR changes apply to solicitations issued on or after the effective date of the change."). Setting aside the issue of applicability of these FAR provisions, Relators here have failed to allege how Defendants' alleged omission of the subcontractors' identities *induced* the government to initially enter into the contract. *See Honeywell*, 798 F. Supp. 2d at 22 (reasoning that allegations that the

---

[6] FAR 52.215-22 (48 C.F.R. § 52.215-22) and FAR 52.215-23.2 (48 C.F.R. § 52.215-23) govern disclosure and notification requirements for subcontractor labor.

government would not have entered into the contract absent a defendant's false statements state a claim for fraudulent inducement). Absent such allegations, Relators' claims cannot survive.

For all of these reasons, the Court finds that the Amended Complaint does not state a FCA claim for fraudulent inducement in Count I pursuant to Rule 12(b)(6). Because Relators have failed to state a claim for fraudulent inducement under Rule 12(b)(6), the Court does not need to reach whether they pled the circumstances of the fraud with the particularity required by Rule 9(b). *Folliard*, 722 F. Supp. 2d at 28. Further, since the Court concludes that Relators have failed to state a fraudulent inducement claim, there is no need to resolve Triton's contention that Relators inappropriately grouped Triton with SRA. Accordingly, Count I is hereby **DISMISSED** as to both Defendants.

## 2. Triton's Solvency (Count IV(a))

In further support of their fraudulent inducement claim, Relators allege that Defendants made false statements to the government by "knowingly concealing Triton's insolvency and numerous outstanding debts and creditors" and by "assert[ing] that Triton was fully qualified to perform on the contract[.]" Am. Compl., ECF No. 32 ¶ 139. According to Relators, this misrepresentation "le[d] the government to award the contract to

Defendants[.]" *Id.* Relators cite a provision in the TEPs touting Defendants' collective "financial stability" as direct evidence of the misrepresentation. *Id.* ¶¶ 112-114. Relators seem to suggest that Defendants had a duty to report Triton's financial condition under (1) the Department of Defense National Industrial Security Program Operating Manual ("DSS NISPOM"), and (2) a provision in the subcontract between Triton and K2GS. *Id.* ¶ 111-12.

Assuming Relators' claims regarding Triton's financial status to be true, the analysis turns on whether the alleged omission of Triton's insolvency constitutes a "misrepresentation" for purposes of a fraudulent inducement claim. The Court finds that Relators have not adequately alleged a misrepresentation here. Rather than allege that the contract between the government and Defendants required the disclosure of subcontractors' financial status, Relators conclusively state that disclosure was "required by DSS NISSPOM". Am. Compl., ECF No. 32 ¶ 112. Relators do not explain why DSS NISSPOM requires the disclosure of subcontractors' financial status, and, as highlighted by SRA, DSS NISSPOM is seemingly limited to classified contracts and inapplicable here. SRA Mot. Dismiss, ECF No. 35 at 42-43. Relators' allegation amounts to a legal conclusion that the Court need not accept as true. *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994) ("Nor must

the court accept legal conclusions cast in the form of factual allegations" at the motion-to-dismiss stage). Furthermore, Relators fail to explain how an alleged violation of a provision in the contract between the first and second-tier subcontractors (*i.e.*, Triton and K2GS) concerning disclosure forms the basis of a misrepresentation (allegedly made by SRA and Triton to the government) for purposes of a fraudulent inducement claim.

Relators provide a single example of an affirmative misrepresentation allegedly made by the Defendants concerning Triton's solvency. According to Relators, a provision in Defendants' task proposal stating that the "team was carefully brought together to provide the corporate size, proven technical capabilities, and *financial stability* required for the program duration and the breadth and depth of skills for qualified staffing" evidences a misrepresentation. Am. Compl., ECF No. 32 ¶ 144 (emphasis added). The Court is not persuaded that this broad statement in Defendants' joint task proposal is synonymous with an express misrepresentation of Triton's solvency. In any event, Relators also fail to explain how this statement induced the government to enter into the contract. *See Schwedt*, 59 F.3d at 199 (reasoning that to state a fraudulent inducement claim, a plaintiff must plead that the defendant's initial misrepresentation was made to induce the government to enter into the contract).

Because Defendants have failed to adequately allege that Defendants made a misrepresentation concerning Triton's insolvency under Rule 12(b)(6), Count IV(a) is **DISMISSED**.[7] Since Relators' claims do not pass muster under Rule 12(b)(6), a Rule 9(b) particularity analysis is unnecessary. *See Folliard*, 722 F. Supp. 2d at 28.

### D. Relators' Presentment Claims

To survive a motion to dismiss on a presentment claim, a plaintiff must allege that "(1) the defendant submitted a claim to the government, (2) the claim was false, and (3) the defendant knew the claim was false." *Folliard*, 722 F. Supp. 2d at 26. Under the FCA, a claim may be considered false if it is either factually or legally false. *United States v. Sci. Applications Int'l Corp.*, 555 F. Supp. 2d 40, 49 (D.D.C. 2008). "A claim can be factually false if it invoices for services that were not rendered or incorrectly describes goods or services provided." *Toyobo*, 811 F. Supp. 2d at 45 (internal quotations omitted). By contrast, a claim may be legally false if it falsely certifies "compliance with a particular statute, regulation, or contractual terms, where compliance is a prerequisite for payment." *Id*. Such certification may be express or implied. *Id*. For the reasons provided below, the Court finds

---

[7] As explained *infra*, Count IV(b) will also be dismissed for failure to state a claim for material false misrepresentation.

that certain of Relators' claims survive Defendants' motions to dismiss, while others warrant dismissal.

### 1. Overtime Pay and Other Claims (Count V)

Relators allege that Defendants: (1) submitted false invoices to the government which falsely represented the amount of overtime worked by various subcontractors; (2) submitted false invoices for travel expenses allegedly incurred by Defendants but in fact incurred by K2GS and other subcontractors; and (3) submitted false invoices for direct labor charges allegedly incurred by Defendants but that in fact were incurred by K2GS and other subcontractors. Am. Compl., ECF No. 32 ¶¶ 143-44. Defendants challenge Relators' allegations for failing to state a claim under Rule 12(b)(6) and for failure to plead with the requisite level of particularity under Rule 9(b). SRA Mot. Dismiss, ECF No. 35 at 28-31; Triton Mot. Dismiss, ECF No. 38 at 32-36.

#### (a)  Overtime Expenses

Relators claim that Defendants billed the government for inflated overtime hours that two individuals—Mr. Song, an independent subcontractor and Ms. Baker,[8] a Triton employee—did

---

[8] Relators do not provide identifying information for Ms. Baker. The Amended Complaint does not offer Ms. Baker's first name and refers to her only as "a salaried Triton employee." Am. Compl., ECF No. 32 ¶ 143.

not perform. Am. Compl., ECF No. 32 ¶ 65. According to Relators, over a five-month period of time, Defendants allegedly billed the government for "92.2 percent over and above what Mr. Song actually invoiced." *Id*. ¶ 66. Defendants "simultaneously billed the government for unauthorized, unperformed overtime or inflated hours" for Ms. Baker "from November 14, 2007 through March 31, 2008." *Id*. ¶ 65. While Relators state that they only have access to invoices during this time period, they suspect that Defendants also "billed the government for fictitious overtime, inflated hours, or fictitious employees during the remaining months" of the two-year contract. *Id*. ¶ 66.

Defendants argue that Relators have pled a breach of contract claim, rather than a false claim pursuant to the FCA. SRA Mot. Dismiss, ECF No. 35 at 28; Triton Mot. Dismiss, ECF No. 38 at 32. While it is axiomatic that *qui tam* plaintiffs have no standing to bring breach of contract claims under the FCA, *see U.S. ex rel. Bender v. N. Am. Telecomms., Inc.*, 750 F. Supp. 2d 1, 10 (D.D.C. 2010), *aff'd*, 499 F. App'x 44 (D.C. Cir. 2013), Relators' claims do not sound exclusively in contract. Rather than argue that certain labor was performed yet improperly categorized as "overtime", Relators allege that Defendants presented false invoices containing plainly fictitious or artificially inflated labor. Am. Compl., ECF No. 32 ¶¶ 65-66. Such allegations fall squarely within the ambit of the FCA. *See*

*Head*, 798 F. Supp. 2d at 197 n.13 ("Relator's allegation that the Government was billed for employee work that was not performed...are, in fact, paradigmatic FCA claims."). Defendants' reliance on *Bender* for the proposition that the submission of unauthorized overtime bills present a breach of contract dispute, *see* SRA Mot. Dismiss, ECF No. 28-29, is misplaced because in that case, the defendants allegedly billed the government for labor that was actually performed but did not qualify for "overtime status" under the terms of the underlying contract. *See Bender*, 750 F. Supp. 2d at 10. By contrast, Relators here allege that Defendants fraudulently billed the government for labor the subcontractors never worked. Am. Compl., ECF No. 32 ¶ 65.

Defendants further contend that Relators' allegations are not plausible because a reading of the Amended Complaint "supports a more obvious explanation", namely that "Triton's invoices include total hours by *labor category*, not by *individual*." SRA Mot. Dismiss, ECF No. 35 at 29 (emphasis in original); *see also* Triton Mot. Dismiss, ECF No. 38 at 32. In other words, Defendants assert that Mr. Song and Ms. Baker may have been billed under the same "Engineer Systems, Senior" labor category on Triton's invoices and thus the hours billed represent a combined total of the hours worked by both individuals. SRA Mot. Dismiss, ECF No. 35 at 29-30. Discovery

may yet reveal which interpretation of Triton's invoices is
correct, however; at this stage, Relators have adequately
alleged a discrepancy between the overtime hours purportedly
worked by the subcontractors and the hours ultimately invoiced
by Triton to support a plausible basis for their claims.
Relators, then, have alleged all of the required elements of a
presentment claim: that Triton submitted a claim, the invoice
was false, and that Triton knew the claim was false. Am. Compl.,
ECF No. 32 ¶¶ 65-67 (describing "Triton's fraud"), 143;
*Folliard*, 722 F. Supp. at 26. Moreover, the Court finds that by
identifying specific time periods during which the alleged fraud
occurred and describing specific invoices containing the alleged
misrepresentations, Relators have pled their allegations with
sufficient particularity. *Williams*, 389 F.3d at 1256 (reasoning
that pleaders must state the time, place, and content of the
false misrepresentations to meet Rule 9(b)'s particularity
requirement). Accordingly, Defendant Triton's motion to dismiss
Relators' claims pertaining to overtime charges is **DENIED**.

Defendant SRA argues that Relators have failed to state a
claim against SRA because Relators have not alleged that SRA, as
opposed to Triton (the subcontractor), had knowledge that the
claims were false. SRA Mot. Dismiss, ECF No. 35 at 40. The Court
agrees. Relators admit that their allegations are derived from a
comparison "of invoices prepared by the subcontractors...and

Triton's available invoices." Am. Compl., ECF No. 32 ¶ 65. It logically follows that any purported inflation or fraudulent overbilling would have occurred at the subcontractor level, in other words, by Triton. At no point do Relators allege any improper actions taken by SRA with regard to billing for overtime charges. *See, e.g., id.* ¶ 67 (characterizing the overbilling scheme as "Triton's fraud"). To survive a motion to dismiss, Relators must allege that SRA was aware of the claims' falsity or acted in "deliberate ignorance or reckless disregard of the truth[.]" *Folliard*, 722 F. Supp. 2d at 33. Because Relators have failed to do so here, their claims against SRA concerning false overtime charges are hereby **DISMISSED**.

   *(b)  Travel Expenses*

   Relators allege that Defendants "knowingly billed the government for business trips that were not taken by...authorized contractors." Am. Compl., ECF No. 32 ¶ 86. Relators claim that Defendants themselves were not authorized to charge for travel expenses because, under the June 2007 TEPs, only certain subcontractors (K2GS, Jim Song and Tiber Creek) were authorized to make such charges. *Id.* SRA argues that: (1) Relators fail to allege that SRA submitted a claim for travel that SRA knew or should have known to be false as required to state a presentment claim; (2) a contractor's proposal for

travel under a time and materials contract, such as the one at issue here, "is merely an estimate of the charges likely to be incurred[;]" and (3) an allegation that any travel taken was "unauthorized" presents a breach of contract claim which is not actionable under the FCA. SRA Mot. Dismiss, ECF No. 35 at 35. Triton likewise argues that Relators: (1) fail to assert that Triton, as the subcontractor, caused SRA to submit the purportedly fraudulent claims; (2) impermissibly assume that travel cost estimates were actually invoiced; and (3) fail to allege with particularity any false claim made by either Defendant. Triton Mot. Dismiss, ECF No. 38 at 35. In response, Relators do not address Defendants' arguments, instead summarily alleging that Defendants "billed the government for travel for time periods in which none of the second-tier subcontractors had done any travel" and "falsely claimed to the government that all the travel funds for K2GS had been expended[.]" Relators' Opp'n, ECF No. 42 at 10. In its Reply, SRA highlights Relators' failure to respond to Defendants' arguments. SRA Reply, ECF No. 44 at 7-8 ("Plaintiffs have not responded how, even if true, these allegations rise above a standard breach of contract claim); *id.* ("Plaintiffs further fail to respond to SRA's claim that the Complaint never alleges it was ever aware of billed but untaken travel by subcontractors[.]"); *id.* at 8 ("The Opposition provides no response.").

Considering Relators' claims against SRA and Triton, the Court finds that Relators have not met their burden under either Rule 12(b)(6) or Rule 9(b). Even assuming that the alleged invoicing of travel presents an FCA claim rather than a breach of contract dispute, Relators have not alleged that either SRA or Triton had knowledge that the invoices they allegedly submitted were false. *See* Am. Compl., ECF No. 32 ¶¶ 86-87; *Folliard*, 722 F. Supp. 2d at 26 (identifying knowledge as an element of an FCA presentment claim). As such, Relators' claims fail to state a claim under Rule 12(b)(6).

Even if Relators' claims could be construed as stating a claim under Rule 12(b)(6), their claim that Defendants misrepresented to the government that travel funds pertaining to K2GS had been expended would fail under Rule 9(b). Am. Compl., ECF No. 32 ¶ 87. Relators do not allege when the purported misrepresentations were made, who made the misrepresentation, and whether Triton or SRA, or both, were involved. *See Williams*, 389 F.3d at 1256 (reasoning that Rule 9(b) requires to "state the time, place and content of the false misrepresentations, the fact misrepresented" and those allegedly involved in the fraud). As pointed out by SRA, Relators "have not identified a single instance in which SRA [or Triton] billed the government for the difference between the travel ceiling and K2GS's incurred travel costs." SRA Mot. Dismiss, ECF No. 35 at 36. Accordingly,

Relators' claims pertaining to unauthorized travel are hereby **DISMISSED.**

*(c) Direct Labor Charges*

Relators also make a number of claims regarding Defendants' alleged misrepresentation of direct labor charges submitted to the government. Am. Compl., ECF No. 32 ¶¶ 68-76, 144. Specifically, Relators allege that Defendants "falsely claimed [direct] labor as 'materials' or other non-labor support, instead of as labor, or [that Defendants] claimed it as their own direct labor." *Id*. ¶ 144. Relators further allege that Defendants failed to sufficiently describe direct labor charges on their invoices, which "made it impossible for the government to determine the tasks for which SRA actually provided direct labor." *Id*. ¶¶ 72-76. SRA counters that the task proposal, which expressly included direct labor charge estimates, authorized SRA to charge for direct labor under the contract. SRA Mot. Dismiss, ECF No. 35 at 31-32. According to SRA, SRA "cannot be 'illegally charging' the government when it is providing the very services it proposed." *Id*. Triton contends that "direct labor" is a term of art in government contracts that distinguishes between direct and indirect costs, and does not necessarily mean that the invoicing contractor was the entity that performed the labor. Triton Mot. Dismiss, ECF No. 38 at 33. Likewise, Triton argues,

36

the task proposals explicitly identified to the government that subcontractor labor costs would be invoiced to the government as direct costs. *Id*. Finally, both Defendants argue that Relators fail to provide any contractual, regulatory or statutory authority imposing obligations on a prime or subcontractor to provide a minimum level of detail on invoices. SRA Mot. Dismiss, ECF No. 35 at 32; Triton Mot. Dismiss, ECF No. 38 at 33. Relators do not respond to Defendants' arguments. *See generally* Relators' Opp'n, ECF No. 42 at 23-28; *see also* SRA Reply, ECF No. 44 at 7 ("Plaintiffs similarly fail to respond how SRA's billing for work it was proposed to perform on a direct labor basis amounts to a false claim.")

The Court finds that Relators fail to state a claim against SRA under the FCA because Relators fail to explain how the supposed sparsity of detail in SRA's invoices constitutes a *false* claim. In light of Defendants' assertion that the task proposals specifically identified and authorized the charging of subcontractor labor as a direct cost, a claim Relators do not rebut, *see generally* Relators' Opp'n, ECF No. 42 at 23-28, Relators do not explain how SRA's alleged billing in accordance with the proposal amounts to a misrepresentation for purposes of the FCA. *See Toyobo*, 811 F. Supp. 2d at 45 (defining falsity to include "invoic[ing] for services that were not rendered"). The Court recognizes that a plaintiff may also demonstrate falsity

37

by alleging that a claim "falsely certifies compliance with a particular statute, regulation or contractual terms, where compliance is a prerequisite for payment." *Id*. However, as Defendants have pointed out, Relators have not identified any contractual, statutory or regulatory authority that require the level of detail Relators contend was necessary. Because Relators have not adequately alleged falsity under the FCA, the allegations against SRA regarding direct labor charges are hereby **DISMISSED** under Rule 12(b)(6). As such, the Court need not reach the question of particularity under Rule 9(b). *Folliard*, 722 F. Supp. 2d at 28.

Relators' claims against Triton must also be **DISMISSED** because, in addition to the pleading defects already identified, the Amended Complaint fails to allege Triton's role in the alleged scheme to misrepresent direct labor charges submitted to the government. Relators only detail misrepresentations and omissions allegedly made by SRA, and, in conclusory fashion, insist that the scheme was conducted "in collusion with Triton." *See* Am. Compl, ¶¶ 68-74. Such vague and conclusory allegations are not sufficient to state a claim under Rule 12(b)(6). *Iqbal*, 556 U.S. at 678 (reasoning that "naked assertions devoid of further factual enhancement" are insufficient to state a claim for relief).

2. Excessive Pass-Through Fees (Count II)

In Count II, Relators allege that Triton routinely charged the government excessive pass-through fees for work performed by its subcontractors. Am. Compl., ECF No. 32 ¶ 51. Relators allege that Triton agreed with Mr. Angello, a DOD representative, "to limit [Triton's] pass-through fee[s] to 0.95 percent" of its subcontractors' invoices, but that Triton actually charged the government 9.95 percent in pass-through fees for K2GS, "6.35 percent in pass-through fees for Mr. Song, 3.89 percent to 6.73 percent in pass-through fees for Tiber Creek, and 4.71 percent in pass-through fees for subcontractor travel." *Id.* ¶¶ 20(3), 51-52. Relators further allege that by not disclosing the identity of the subcontractors in Defendants' TEPs and MSRs, Triton concealed the inflated pass-through fees and SRA charged pass-through fees "on 100 percent of all subcontractor labor, rather than just Triton's work product alone." *Id.* ¶ 52. As a result, Relators allege that both Triton and SRA "ma[de] a false claim on each of its invoices, and in virtually every entry on its invoices in which it sought reimbursement for work performed by [the subcontractors]." *Id.* ¶ 53.

SRA and Triton argue that the FAR provisions cited by Relators that seemingly limit excessive pass-through charges are inapplicable because: (1) the provisions were not enacted at the

time the contract was executed in 2003; (2) even if the FAR
provisions had been enacted, they would not apply to Triton
because Triton's intended subcontracting did not exceed the pre-
defined threshold; and (3) the alleged agreement with Mr.
Angello is unenforceable. SRA Mot. Dismiss, ECF No. 35 at 21-24;
Triton Mot. Dismiss, ECF No. 38 at 18-21. Triton further
contends that Relators' allegations based "upon information and
belief" fail Rule 9(b)'s particularity requirement and that any
obligations concerning pass-through fees "apply only to SRA as
the entity with contractual privity with the government." Triton
Mot. Dismiss, ECF No. 38 at 18-19. Without responding to any of
Defendants' other arguments, Relators reply that Congress
expressly stipulated that the FAR regulations proscribing
excessive pass-through fees would become effective three months
before the 2007 task order in this case was let to Mr. Keaveney.
Relators' Opp'n, ECF No. 42 at 29-30.

Here, the Court finds that Relators have not stated a claim
under Rule 12(b)(6). To state a presentment claim, Relators must
allege, *inter alia*, that the claims submitted by Defendants were
false. *Folliard*, 722 F. Supp. 2d at 26. Relators base their
falsity allegations on FAR provisions that Relators readily
concede weren't promulgated until October 2009, after
performance on the task orders had been completed. *See* Relators'
Opp'n, ECF No. 42 at 29. In an effort to surmount this obstacle,

40

Relators argue that Congress put DOD contractors on notice in
October 2006——eight months before Relators joined the task
order——that the DOD would at some future point in time issue
regulations concerning excessive pass-through fees that would
apply to DOD contracts "awarded on or after May 1, 2007". *Id*. at
30. Ultimately, the regulations were not issued until October
2009. *Id*.

As highlighted by SRA and conceded by Relators, the
underlying contract at issue in this case was awarded in 2003,
four years before the effective date of the regulations
governing pass-through fees that Relators contend should apply.
*See* Am. Compl., ECF No. 32 ¶ 19 ("In 2003, the DoD awarded
Galaxy Scientific Corporation ("Galaxy") the DoD contract
DAAB07-03-D-B011...to provide analytic services and software.");
SRA Reply, ECF No. 44 at 9. Not only does the Amended Complaint
allege that DOD awarded contract DAAB07-03-D-B011 to Defendants
in 2003, but the 2007 and 2008 task proposals also clearly list
the same contract number as the applicable one. *See* 2007 and
2008 Task Execution Proposals, ECF No. 32-2 at 24, 60
(identifying the applicable contract number as DAAB07-03-D-
B011); Am. Compl., ECF No. 32 ¶ 19. It stands to reason that
Defendants could not have violated a law that did not exist at
the time the contract was awarded. Therefore, the Court finds
that Relators have failed to state a claim pursuant to Rule

12(b)(6) because Relators' claim that the pass-through fees submitted by Defendants were false is based on a DOD regulation that did not exist at the time the underlying contract was awarded. Because the regulation did not exist, the Court is unable to infer that the Defendants violated the FCA.[9] *See Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").[10] Accordingly, Count II of the Amended Complaint is hereby **DISMISSED**.

### 3. Kickback Payments (Count VI)

As best the Court can discern, Relators attempt to allege a kickback scheme. *See generally* Am. Compl., ECF No. 32 97-106. According to Relators, Defendants "misallocat[ed] funds so that charges actually incurred by a [second-tier] subcontractor... were instead recorded as charges incurred by Triton." *Id*. ¶ 148.

---

[9] Relators' argument that the charged pass-through fees violated the alleged oral agreement between Mr. Angello and Triton, *see* Am. Compl., ECF No. 32 ¶ 51, presents a breach-of-contract dispute over which Relators have no standing. *Bender*, 750 F. Supp. 2d at 10. Nonetheless, even assuming that were not the case, Relators have failed to allege that SRA was a party to that agreement, was aware of its existence, or that the oral agreement was incorporated into the ultimate contract between Defendants and the government. In the absence of these allegations, Relators cannot demonstrate falsity as required to state a claim under the FCA. *Folliard*, 722 F. Supp. 2d at 26.

[10] The Court can also dismiss Relators' pass-through claims for failing to respond to any of Defendants' arguments for why, even if the FAR provisions were enacted prior to the underlying contract, they do not apply to the instant case. *Stephenson v. Cox*, 223 F. Supp. 2d 119, 121 (D.D.C. 2002)("[W]hen a plaintiff files a response to a motion to dismiss but fails to address certain arguments made by the defendant, the court may treat those arguments as conceded, even when the result is dismissal of the entire case.").

SRA then presented those charges to the government and once paid, Defendants "ke[pt] the funds through a kick-back scheme among themselves[.]" *Id.* Relators allege that Defendants, among other things, used a "particular coding system" in its invoices which "mea[nt] nothing to the government" to "give the appearance that all the labor had been performed by Triton" rather than by the second-tier subcontractors. *Id*. ¶ 97. Defendants argue that Relators: (1) have not alleged how the supposed kickback scheme resulted in the submission of false claims or statements; and (2) fail to adequately plead a violation under the Anti-Kickback Act. SRA Mot. Dismiss, ECF No. 35 at 40-41; Triton Mot. Dismiss, ECF No. 38 at 36-38. Relators make no attempt to respond to Defendants' arguments. *See generally* Relators' Opp'n, ECF No. 42 (making no mention of Relators' kickback allegations).

As an initial matter, this Court may dismiss Relators' kickback claim because Relators fail to respond to Defendants' arguments. "[W]hen a plaintiff files a response to a motion to dismiss but fails to address certain arguments made by the defendant, the court may treat those arguments as conceded, even when the result is dismissal of the entire case." *Stephenson v. Cox*, 223 F. Supp. 2d 119, 121 (D.D.C. 2002). In any event, Relators' kickback claim also fails under Rule 12(b)(6). As stated *supra*, to state a presentment claim, a plaintiff must

allege that the defendant submitted a claim, the claim was false, and the defendant knew the claim was false. *Folliard*, 722 F. Supp. 2d at 26. While the Amended Complaint broadly alleges the existence of a kickback scheme, at no point do Relators identify any underlying false claims for payment that were allegedly submitted by Defendants. *See generally* Am. Compl., ECF No. 32 ¶¶ 97-106. Moreover, Relators fail to demonstrate how the coding system allegedly implemented by Defendants rendered any invoices "false" for purposes of the FCA. Rather than allege that the Relators "incorrectly describe[d] goods or services provided", *see Toyobo*, 811 F. Supp. 2d at 45, Relators concede that the coding was logically consistent. *See* Am. Compl., ECF No. 32 ¶ 97 (alleging that Defendants used "K2GS" for K2 Global Solutions and "TC" for Tiber Creek). The Amended Complaint therefore fails to "contain[] sufficient factual matter" from which the Court could "draw the reasonable inference" that Defendants violated the FCA. *Iqbal*, 556 U.S. at 678. Accordingly, Count VI is hereby **DISMISSED**.

## A. Relators' Material False Statement Claims

In addition to their presentment claims, Relators allege that Defendants submitted false statements to the government in furtherance of their false claims scheme and in violation of 31 U.S.C § 3729(a)(1)(B). To state a material false statement claim under the FCA, "a plaintiff must allege that (1) the defendant

made or used a 'record or statement;' (2) the record or statement was false; (3) the defendant knew it was false; and (4) the record or statement was 'material' to a false or fraudulent claim." *U.S. ex rel. Hood v. Satory Global, Inc.*, 946 F. Supp. 2d 69, 85 (D.D.C. 2013); *see also U.S. ex rel. Ervin & Assocs., Inc. v. Hamilton Sec. Grp., Inc.*, 370 F. Supp. 2d 18, 36 (D.D.C. 2005) ("The great weight of case law holds that the materiality of a false record or statement is an element of False Claims Act liability."). "Material" means "having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property." *Tran*, 53 F. Supp. 3d at 123. As explained below, the Court finds that Count III states a claim for relief but **DISMISSES** Count IV(b).

   1. Monthly Status Reports (Count III)

   In Count III, Relators allege that Defendants routinely created false MSRs in order to obscure their fraudulent scheme. Am. Compl., ECF No. 32 ¶ 134. Defendants did so "to ensure that their MSRs were consistent with their TEPs and invoices,...pass government audit,...and to procure all related and subsequent contract proposals." *Id*. Specifically, Relators allege that Defendants: (1) failed to disclose the actual status for task orders; (2) mislabeled expenditures as direct costs; (3) failed to identify and disclose labor costs, rates, and hours for its

subcontractors; (4) declined to identify certain direct costs in its schedules; and (5) failed to identify the total small business participation on the contract. *Id.* ¶ 134.

Defendants point to a select few of the alleged false statements, asserting that they are not, in fact, false. *See, e.g.*, SRA Mot. Dismiss, ECF No. 35 at 25; Triton Mot. Dismiss, ECF No. 38 at 23-24. Defendants also argue that the MSRs do not qualify as "claims" under the FCA and therefore liability cannot attach for any alleged inaccuracies contained therein. SRA Reply, ECF No. 44 at 7; Triton Mot. Dismiss, ECF No. 38 at 27. Relators do not respond to Defendants' arguments. *See* Relators' Opp'n, ECF No. 42 at 18-23.

Here, Count III survives Defendants' challenges because the Amended Complaint alleges each element of a material false statement claim with particularity that Defendants made false statements to the government in the form of its MSR submissions. Relators append to the Amended Complaint specific MSRs submitted by Defendants in June and July 2008 and identify a litany of purported misrepresentations and omissions made by Defendants, including, *inter alia*, "removing newly identified risks and other critical remarks[,]...continuing to bill the government for tasks after they were completed[,]...billing the government for employees on tasks for which they performed no

work[,]...replacing subcontractor names with those of
Defendants' employees[, and]... routinely falsifying and/or
omitting K2GS contributions, disclaimers, risks and
authorship[.]" Am. Compl., ECF No. 32 ¶ 60. Relators further
allege that Defendants, to avoid detection, knowingly created
the false MSRs to mirror the fraudulent task proposals and
inflated invoices. *Id.* ¶59. Relators also allege that the
misrepresentations were material. *Id.* ¶ 60. Thus, Relators have
alleged each element of their material misrepresentation claim
and satisfied the requirements of Rule 12(b)(6). Moreover, the
Court considers Relators' citation to specific invoices and
detailed recitation of the alleged misrepresentations in
Defendants' MSRs sufficient to meet their burden under Rule 9(b)
to allege their claims with particularity.

Defendants' arguments to the contrary are not persuasive.
First, Defendant's assertion that the information contained in
the status reports are not truly false, presents a question of
fact more appropriately resolved after discovery closes. Such
"factual issues will not be resolved at the motion to dismiss
stage of the litigation, where the plaintiff's factual
allegations are accepted as true." *Toyobo*, 811 F. Supp. 2d at
48. Further, Defendants' argument that MSRs are not "claims" for
purpose of the FCA is misplaced. While the MSRs are, as their
name suggests, "status reports" and not claims on the public

fisc, the FCA clearly provides for liability for the submission of false *statements* material to a false or fraudulent claim. *Ervin*, 370 F. Supp. 2d at 36 (discussing the elements of a material false statements claim).

The Court finds that Relators have sufficiently alleged that the false statements in the MSRs were material to the claims submitted by Defendants under the contract. Am. Compl., ECF No. 32 ¶ 60. As such, Relators' allegations state a material false statement claim under Rule 12(b)(6). Further, the Court finds that by identifying specific MSRs and describing, in detail, the misrepresentations contained therein, Relators have pled their allegations with sufficient particularity. *Williams*, 389 F.3d at 1256 (reasoning that plaintiffs must plead the time, place, and content of the false misrepresentations to satisfy Rule 9(b)'s particularity requirement). Defendants' motions to dismiss with regard to Count III of the Amended Complaint are hereby **DENIED**.

2. ARPBS Projections (Count IV(b))

In Count IV(b), Relators allege that Defendants' ARPBS projections to the government "falsely stated the identity of the personnel who were to work on the contract." Am. Compl., ECF No. 32 ¶ 138. According to Relators, Defendants "initially identif[ied] Triton employees as [subcontractor] employees" and

then "subsequently remov[ed] the subcontractors (other than Triton), and list[ed] unqualified Triton employees in their place[.]" *Id*. Relators allege that "all prime contracts have a provision regarding 'Personnel and Performance'" which mandates, *inter alia*, that subcontractors notify prime contractors of any need to substitute personnel. *Id*. ¶ 110. Defendants argue that Relators have not alleged how the alleged omission of the subcontractor employees was material to the government's decision to make payments under the contract. SRA Mot. Dismiss, ECF No. 35 at 42; Triton Mot. Dismiss, ECF No. 38 at 30. Relators do not directly respond to Defendants arguments but rather restate allegations from Amended Complaint that Defendants "misled DOD through removing information about the identity and work of the subcontractors." Relators' Opp'n, ECF No. 42 at 6.

The Court finds that Relators fail to state a material false statement claim relating to the ARPBS projections for two reasons: First, Relators concede that the replacement of personnel presents a breach of contract dispute, over which Relators have no standing. *See* Am. Compl., ECF No. 32 ¶ 110 ("Defendants' 'bait-and-switch' scheme regarding the 'Personnel and Performance' provision created an irreparable, material breach with the prime contract, as well as all subcontractors"); *Bender*, 750 F. Supp. 2d at 10. However, even assuming Relators

did allege a false claim, they——as Defendants highlight——have failed to allege that the removal of subcontractor names from the ARPBS projections was material to the government's decision to pay. *See Ervin*, 370 F. Supp. 2d at 36 (recognizing that the materiality of a false record or statement is an element of False Claims Act liability). As a result, Count IV(b) is hereby **DISMISSED** under Rule 12(b)(6). Because the Court has determined that Relators have failed to state a claim under Rule 12(b)(6), further analysis for particularity under Rule 9(b) is unnecessary.

### IV.   CONCLUSION

For the foregoing reasons, Defendants' Motions to Dismiss are **GRANTED in part and DENIED in part**. Count III against both Defendants shall proceed. Count V's claim pertaining to alleged overtime charges shall also proceed but only against Triton. All remaining claims are **DISMISSED**. An appropriate Order accompanies this Memorandum Opinion, filed this same day.

**SO ORDERED.**


**Emmet G. Sullivan**
**United States District Court**
**November 29, 2016.**